## Krusen v. Krusen

554

C.P. of Cumberland County, no 94-7082 Civil.

*John J. Connelly Jr.,* for plaintiff.
*Barbara Sumple-Sullivan,* for defendant.

OLER, *J.,* June 24, 1996—This is a child custody case in which a petition has been filed to modify an existing custody order entered by this court. Presently before the court are preliminary objections to the petition to modify, challenging the exercise of jurisdiction by this court on "home state" and forum non conveniens grounds.

The issue presented by the case is whether this court may or should exercise jurisdiction on a petition to modify an April 1995 custody order entered by it, where the order granted primary physical custody of the parties' preschool-age child to the plaintiff mother, authorized the mother's relocation to North Dakota, granted temporary or partial physical custody of the child to the defendant father for periods of 20 days every two months and an additional period every summer, and authorized the parties to seek an amended order at such time as the child was to begin school, and where the father, who continues to reside in Cumberland County, Pennsylvania, now seeks an amended order as the child prepares to begin school. For the reasons stated in this opinion, plaintiff's preliminary objections challenging the court's exercise of jurisdiction will be denied.

## PROCEDURAL HISTORY;
## STATEMENT OF FACTS

The subject of this custody action is Matthew Thomas Antonio Krusen, born March 12, 1991. Plaintiff and mother of the child is Beth Ann Hamerlik (formerly Krusen), residing at 1549 Eighth Street South, Fargo, North Dakota. Defendant and father of the child is Kurt R. Krusen, residing at 15 Beaver Road, Camp Hill, Cumberland County, Pennsylvania.

Following a custody hearing in April of 1995, this court entered the following order:

"And now, April 10, 1995, upon consideration of the custody complaint in the above-captioned matter with respect to the parties' child, Matthew Thomas Antonio Krusen, born March 12, 1991, and following a hearing, the court finds inter alia that plaintiff's proposed relocation to Fargo, North Dakota, is likely to significantly improve the quality of life for plaintiff and the child, that the relocation is not motivated by a desire to frustrate the visitation rights of defendant or to impede the development of a healthy relationship between the child and defendant, and that feasible arrangements can be made to ensure a continuing, meaningful relationship between the child and defendant notwithstanding the relocation, and it is ordered and directed as follows:

"(1) Legal custody of the child shall be shared by the parties.

"(2) Primary physical custody shall be in plaintiff, the mother. Temporary or partial physical custody shall be in defendant, the father, for periods of 20 days every two months; provided, that during the summer one such period shall be expanded to five weeks. Plaintiff shall be responsible for the expenses and any necessary accompaniment of the child with respect to custodial ex-

changes between Fargo, North Dakota, and BWI Airport.

"Nothing herein is intended to preclude the parties from varying the terms of this order by mutual agreement. At such time as the child is ready to begin school, if the parties are unable to agree upon a revised schedule, counsel are requested to petition the court for an additional hearing to obtain an amended order to accommodate the child's school schedule." [1]

The factual background of this case was recounted in an opinion entered in support of the order.[2] Consequently, those facts will not be repeated here.

A petition to modify the order was filed by defendant father on April 10, 1996. The petition noted that the child would be entering public school in the fall of 1996, and that the existing custody schedule would no longer be feasible.

On May 1, 1996, plaintiff mother filed preliminary objections to defendant's petition to modify. The preliminary objections challenged this court's exercise of jurisdiction with respect to the petition to modify, based

1. Subsequent to issuance of this order of April 10, 1995, the court was requested by counsel to state with more precision the times of the father's temporary or partial custody. Pursuant to Pennsylvania Rule of Appellate Procedure 1701(b), the following order was entered:

"In the absence of an agreement by the parties to the contrary, defendant's 20-day periods of temporary or partial custody shall begin with his receipt of the child at BWI Airport on the first day of every other month and end with his delivery of the child to the airport, on the 21st day of that month. Defendant's five-week period of temporary or partial custody during the summers of 1995 and 1996 shall begin on July 1 and end on August 5."

2. *Krusen v. Krusen*, 44 Cumb. L.J. 314 (1995). An appeal from the order to the Superior Court by the father was withdrawn.

upon a change in the child's "home state" from Pennsylvania to North Dakota[3] and the doctrine of forum non conveniens;[4] the objections also averred that plaintiff was "in the process of filing a petition with the North Dakota court to modify the existing Pennsylvania order . . . ."[5] Defendant father filed an answer to the preliminary objections on May 24, 1996, supporting this court's exercise of jurisdiction.

The matter was listed for the May 29, 1996 argument court. By agreement of counsel, the issue has been submitted on briefs.

## DISCUSSION

In *Barndt v. Barndt,* 397 Pa. Super. 321, 580 A.2d 320 (1990), an interstate custody case involving, coincidentally, the states of North Dakota and Pennsylvania, the Pennsylvania Superior Court held that in certain circumstances, by virtue of the federal Parental Kidnapping Prevention Act,[6] jurisdiction to modify an existing custody order lies exclusively with the court of the state which initially issued the order. In *Barndt,* Judge Kelly, supported in a concurring opinion by Judge Cercone, discussed one of the purposes of the federal legislation:

"In 1980, the United States Congress enacted the Parental Kidnapping Prevention Act (PKPA). The title of the Act is misleading and unfortunate, as it was by no means limited to criminal matters relating to kidnapping. Rather, one of the [principal] purposes of

---

3. See Act of December 19, 1990, P.L. 1240, §2, 23 Pa.C.S. §§5343, 5344(a)(1).

4. See *id.,* section 5348(a), (c).

5. Plaintiff's preliminary objections, paragraph 13.

6. 28 U.S.C. §1738.

the PKPA was to protect the right of a decree issuing state to exercise exclusive continuing jurisdiction over its child custody orders in certain cases, and to channel custody litigation into the court having continuing jurisdiction by requiring states to give full faith and credit to the custody decrees of states retaining jurisdiction and preventing the issuance of competing decrees. To this end, the PKPA established national standards to determine jurisdiction in interstate custody disputes." *Id.* at 331, 580 A.2d at 325. (citations omitted)

In accordance with this purpose, the federal law provides, inter alia, as follows:

"The jurisdiction of a court of a state which has made a child custody determination . . . continues as long as [such court has jurisdiction under the law of such state] and such state remains the residence of the child or *of any contestant. . . .*

"A court of a state may modify a determination of the custody of the same child made by a court of another state, if—

"(1) it has jurisdiction to make such a child custody determination; *and*

"(2) the court of the other state no longer has jurisdiction, or it has declined to exercise such jurisdiction to modify such determination." 28 U.S.C. §1738A(d),(f). (emphasis added)

Applying the federal law the Superior Court in *Barndt* vacated a Pennsylvania court's modification of an existing North Dakota custody order on jurisdictional grounds where (a) the North Dakota court had initially exercised proper jurisdiction, (b) a proper basis continued to exist for the exercise of jurisdiction by North Dakota, (c) the North Dakota court had not effectively declined to exercise jurisdiction, and (d) one of the

parties continued to reside in North Dakota.[7] The import of the decision in *Barndt,* for present purposes, is that unless this court has no basis for continuing to exercise jurisdiction, or declines to do so, plaintiff's position that a court in North Dakota should determine the issue of modification of the existing Pennsylvania order cannot be sustained.[8]

Under the Uniform Child Custody Jurisdiction Act,[9] a Pennsylvania court "has jurisdiction to make a child custody determination by initial or modification decree if[,]" inter alia:

"(1) this Commonwealth . . . is the home state of the child at the time of commencement of the proceeding; or . . .

"(2) it is in the best interest of the child that a court of this Commonwealth assume jurisdiction because . . . the child and his parents, or the child and at least one contestant, have a significant connection with this Commonwealth . . . and there is available in this Commonwealth substantial evidence concerning the present or future care, protection, training and personal relationships of the child . . . ."[10]

"Home state," under the Act, is defined as "[t]he state in which the child immediately preceding the time involved lived with his parents, a parent or a person acting as parent, or in an institution, for at least six consecutive months, and, in the case of a child less

---

7. *Barndt v. Barndt,* 397 Pa. Super. 321, 580 A.2d 320 (1990).

8. This is so, because it does not appear to be disputed that this court initially exercised proper jurisdiction in issuing the custody order in question, or that one of the parties continues to be a resident of this state.

9. Act of December 19, 1990, P.L. 1240, 23 Pa.C.S. §§5341 et seq.

10. *Id.,* section 5344(a)(1), (2).

than 6 months old, the state in which the child lived from birth with any of the persons mentioned. Periods of temporary absence of any of the named persons are counted as part of the six-month or other period."[11]

In addition, under the Act, a Pennsylvania court which has jurisdiction to issue an initial decree or a modification decree may decline to exercise such jurisdiction if it finds that it is an inconvenient forum and that a court of another state is a more convenient forum.[12] Factors to be considered in a determination as to forum non conveniens include:

"(1) If another state is or recently was the home state of the child.

"(2) If another state has a closer connection with the child and his family or with the child and one or more of the contestants.

"(3) If substantial evidence concerning the present or future care, protection, training and personal relationships of the child is more readily available in another state.

"(4) If the parties have agreed on another forum which is no less appropriate.

"(5) If the exercise of jurisdiction by a court of this Commonwealth would contravene any of the purposes stated in [the Act]."[13]

In summary, this court's jurisdiction under the Uniform Child Custody Jurisdiction Act may be in the form of "(1) 'home state' jurisdiction [or] (2) jurisdiction founded upon 'significant contacts' among the parties to the custody action and the locale in which the action

11. *Id.,* section 5343.
12. *Id.,* section 5348(a).
13. *Id.,* section 5348(c).

has been brought," inter alia.[14] In addition, the court *may*, if it chooses, decline to exercise jurisdiction on grounds of forum non conveniens.[15]

Under the circumstances of the present case, which include the family's residence in Pennsylvania prior to the court's initial order in April of 1995, the father's continued residence in Pennsylvania, the continued presence of the child in Pennsylvania for substantial periods of time on a regular basis, the parties' acquiescence in an order which provided for review by this court of the custodial schedule when the child was to begin school, and this court's familiarity with the case based upon a relatively recent adjudication following a hearing, we believe that sufficient significant contacts among the parties and this locale exist to warrant the continued exercise of jurisdiction by this court under the Uniform Child Custody Jurisdiction Act,[16] and we are not persuaded that this forum is so inconvenient for the parties that the matter should be transferred to North Dakota. For this reason, plaintiff cannot prevail in her position that defendant's petition for modification either must or should be adjudicated in North Dakota, and the following order will be entered:

## ORDER

And now, June 24, 1996, upon consideration of plaintiff's preliminary objections to defendant's petition for modification, and for the reasons stated in the accompanying opinion, the preliminary objections are denied.

---

14. *Guadagnino v. Montie,* 435 Pa. Super. 603, 614, 646 A.2d 1257, 1262 (1994).

15. See generally, *Hamm v. Hamm,* 431 Pa. Super. 283, 636 A.2d 652 (1994).

16. Cf. *Guadagnino v. Montie, supra.*