J-A25004-17

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| JASON COHEN | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellant | : | |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| LYNNE GOLD-BIKIN, ESQUIRE AND | : | No. 552 EDA 2017 |
| WEBER GALLAGHER SIMPSON | : | |
| STAPLETON FIRES & NEWBY, LLP | : | |

Appeal from the Order Entered January 13, 2017
In the Court of Common Pleas of Philadelphia County
Civil Division at No(s):  June Term, 2016 No. 2663

BEFORE:   OTT, J., STABILE, J., and STEVENS*, P.J.E.

MEMORANDUM BY OTT, J.:                    **FILED FEBRUARY 07, 2018**

Jason Cohen appeals from the order entered January 13, 2017, in the Philadelphia County Court of Common Pleas.  The order sustained the preliminary objections filed by Lynne Gold-Bicken, Esquire, and Weber Gallagher Simpson Stapleton Fires & Newby, LLP (hereinafter "Attorney"), and dismissed, with prejudice, Cohen's complaint, in this legal malpractice action. On appeal, Cohen argues the trial court erred in finding he failed to state a cognizable claim for legal malpractice.  For the reasons below, we affirm.

The instant legal malpractice action emanates from Attorney's representation of Cohen in a prior custody battle with his now ex-wife, Alexis Braid.  The following pertinent facts and procedural history are gleaned from

_____

* Former Justice specially assigned to the Superior Court.

Cohen's amended complaint, this Court's unpublished decision in a prior appeal of the custody action, and the trial court docket. **See** First Amended Complaint, 11/15/2016; **J.C. v. A.B.**, 96 A.3d 1082 (Pa. Super. 2014) (unpublished memorandum).

In June of 2012, Braid filed a complaint in divorce in Montgomery County, Pennsylvania, and sought primary legal and physical custody of the parties' only child, Kayla, born in November of 2006. At that time, Braid was pregnant with Cohen's second child. In July of 2012, Braid filed a petition for special relief and requested permission to "relocate temporarily" to Florida in order to reside with her parents for the birth of their second child. **J.C.**, **supra**, 96 A.3d 1082 (unpublished memorandum at *1). On August 13, 2012, Cohen and Braid entered into a stipulation whereby the parties would share legal custody of Kayla, but Braid would be granted primary physical custody of the child, and be permitted to move, temporarily, to Florida to "reside with her parents during the duration of her pregnancy." First Amended Complaint, 11/15/2016, at ¶ 7. On August 31, 2012, after the stipulation was filed in court, Attorney entered an appearance on behalf of Cohen.

Thereafter, on September 12, 2012, Braid gave birth in Florida to the parties' second daughter, Kendall. In November of 2012, Braid issued notice of her intention to relocate permanently to Florida. **See J.C.**, **supra**, 96 A.3d 1082 (unpublished memorandum at *5). Cohen objected to the relocation, and, in addition, filed a petition seeking genetic testing of Kendall to establish

his paternity.  Braid and Kayla returned to Pennsylvania as agreed; however, Kendall remained in Florida.

The trial court conducted a three-day custody/relocation hearing from February 4-6, 2013.  Before the court issued its ruling, on March 1, 2013, Cohen filed an amended custody complaint, seeking joint legal and primary physical custody of both daughters, after genetic testing established his paternity of Kendall.  On March 15, 2013, the trial court entered an order granting Braid primary physical custody of Kayla and permitting her to relocate to Florida.  The order did not mention Kendall.  **See** First Amended Complaint, 11/15/2015, at Exhibit C, Order, 3/15/2013.  Cohen filed a motion for reconsideration on March 20, 2013, but only mentioned Kendall in the final two paragraphs:  (1) stating there was a "pending action for custody of Kendall in Pennsylvania[;]"[1] and (2)  claiming Braid had refused to "bring Kendall to Pennsylvania" or permit him to see her in the hospital and demonstrated a pattern of obstructive behavior designed to prevent contact between [Cohen] and his children[.]"  **Id.** at Exhibit D, Motion for Reconsideration, 3/20/2013, at 7.  Cohen's request for relief, however, only sought primary physical custody of Kayla.  **See id.** at 8.  The court did not rule upon the motion for reconsideration before Cohen filed a notice of appeal on April 10, 2013.

---

[1] Presumably, this "pending action for custody of Kendall" was the amended custody complaint filed by Cohen on March 1, 2013.

In a decision filed on January 14, 2014, a panel of this Court affirmed, in part, and reversed, in part. **See *J.C.*, *supra*.** Specifically, the panel affirmed the award of primary physical custody to Braid, but reversed the order granting her petition for relocation. **See *id.*,** 96 A.3d 1082 (unpublished memorandum at *17). On January 17, 2014, Cohen filed a petition to modify in the trial court seeking custody of Kendall. On remand from the decision of the Superior Court, the trial court entered a temporary order on March 4, 2014, granting Cohen sole legal and primary physical custody of Kayla. On March 19, 2014, after securing Cohen the relief he requested, Attorney withdrew her appearance, and new counsel entered an appearance on behalf of Cohen.

Subsequently, on March 28, 2014, the parties entered into a stipulation, whereby they agreed Cohen's custodial period would begin following the 2014 school year. Once again, the stipulation did not mention Kendall. By order dated April 8, 2014, the trial court approved the stipulation as a final order of the court. Thereafter, Braid filed preliminary objections, contesting Cohen's motion seeking custody of Kendall. On June 8, 2015, the trial court entered an order sustaining Braid's preliminary objections, and dismissing Cohen's complaint for lack of subject matter jurisdiction. **See** Attorney's Preliminary Objections, 12/5/2016, at Exhibit E, Order, 6/8/2015. Cohen did not appeal that order.

In the interim, Cohen instituted the present legal malpractice action by filing a *writ* of summons on June 23, 2016. Subsequently, on November 15,

2016, he filed a first amended complaint, asserting a claim of breach of contract/covenant of good faith based upon Attorney's failure to pursue custody of Kendall. *See* First Amended Complaint, 11/15/2016, at ¶¶ 29-32. He claims that as a result of Attorney's neglect, he "does not have full physical and legal custody of Kendall or, in fact, any custody rights at all as to Kendall; and has suffered extreme and severe emotional distress and significant financial loss as a result thereof." *Id.* at ¶ 28. On December 15, 2016, Attorney filed preliminary objections, asserting, *inter alia*, Cohen cannot establish a legal malpractice claim because (1) he would not have prevailed in the underlying dispute since the Montgomery County court had no jurisdiction to determine the custody of Kendall; and (2) he has not suffered actual harm because he can still seek custody of Kendall in her home state of Florida. *See* Preliminary Objections to First Amended Complaint, 12/5/2016, at 5-8, 10-11. After reviewing a reply by Cohen and another response by Attorney, on January 13, 2017, the trial court entered an order sustaining Attorney's preliminary objections, and dismissing the claims with prejudice. This appeal followed.[2]

Cohen's sole argument on appeal asserts the trial court erred in concluding he failed to state a cognizable claim of legal malpractice, and sustaining Attorney's preliminary objections.

---

[2] The trial court did not direct Cohen to file a concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(b).

"[Our] standard of review is *de novo* and the scope of review is plenary" when this Court considers a trial court's order sustaining preliminary objections. ***Jones v. Bd. of Directors of Valor Credit Union***, 169 A.3d 632, 635 (Pa. Super. 2017) (quotation omitted). Furthermore, if the trial court's ruling "will result in the denial of claim or a dismissal of suit, preliminary objections will be sustained only where the case is free and clear of doubt." ***Id.*** (quotation omitted).

To state a cognizable claim of legal malpractice a plaintiff must plead the following three elements:

> employment of the attorney or other basis for a duty; the failure of the attorney to exercise ordinary skill and knowledge; and that the attorney's negligence was the proximate cause of damage to the plaintiff.

***412 N. Front St. Assocs., LP v. Spector Gadon & Rosen, P.C.***, 151 A.3d 646, 657 (Pa. Super. 2016). The Pennsylvania Supreme Court has explained:

> An essential element to this cause of action is proof of actual loss rather than a breach of a professional duty causing only nominal damages, speculative harm or the threat of future harm. Damages are considered remote or speculative only if there is uncertainty concerning the identification of the existence of damages rather than the ability to precisely calculate the amount or value of damages. In essence, a legal malpractice action in Pennsylvania requires the plaintiff to prove that he had a viable cause of action against the party he wished to sue in the underlying case and that the attorney he hired was negligent in prosecuting or defending that underlying case (often referred to as proving a "case within a case").

***Kituskie v. Corbman***, 714 A.2d 1027, 1030 (Pa. 1998) (internal citations omitted).

Here, the trial court found Cohen failed to state a claim of legal malpractice against Attorney for two reasons: (1) Cohen did not establish he would have prevailed in a custody action for Kendall in the trial court, and (2) Cohen failed to show he suffered actual damages. **See** Trial Court Opinion, 2/22/2017, at 2.

First, in determining Cohen failed to demonstrate he would have prevailed in the prior custody action, the trial court explained that because Kendall's "home state" is Florida, the Montgomery County trial court would not have had jurisdiction to make a custody determination. **See id.** at 3. Indeed, the trial court noted that Cohen did, in fact, later seek custody of Kendall in the Pennsylvania courts, and the trial court in that proceeding dismissed Cohen's complaint for custody because it lacked "Subject Matter Jurisdiction."[3] **Id.** at 4.

Second, in concluding Cohen's purported damages were merely speculative, the court stated "[t]he opportunity to obtain custody in Florida remains; [] Cohen has not suffered actual harm; and, there has been no adverse ruling as to Kendall." **Id.** at 2. Consequently, the trial court sustained Attorney's preliminary objections and dismissed the complaint with prejudice.

Inexplicably, Cohen does not address the specific elements of a legal malpractice action in his brief. Rather, he asserts the Montgomery County

---

[3] In fact, the trial court noted that Cohen's "sole legal argument" on this issue in his response to Attorney's preliminary objections, "was a lengthy quote from a memorandum submitted by a successor attorney in the underlying custody matter[.]" Trial Court Opinion, 2/22/2017, at 4.

- 7 -

trial court had jurisdiction over Kendall, so the court erred in dismissing his complaint on that basis. **See** Cohen's Brief at 17. Moreover, Cohen claims he did suffer "actual harm" because, as a result of Braid's alienation of Kendall in Florida, he "sustained severe emotional distress (and financial loss towards visitation out-of-state)." **Id.** at 17.

With regard to the jurisdictional issue, Cohen asserts that although Florida may be Kendall's "home state" pursuant to the Uniform Child Custody Jurisdiction Act ("UCCJA"),[4] "in certain circumstances the trial court may determine the home state is not the most appropriate forum." Cohen's Brief at 18, *citing* **Merman v. Merman**, 603 A.2d 201 (Pa. Super. 1992). Cohen insists Braid "implicitly" conceded Pennsylvania was the "most appropriate forum" for the parties' custody proceedings, and acted with "unclean hands" when she alienated Cohen from Kendall, and refused to bring the child to Pennsylvania. **Id.** Furthermore, he maintains a best interest of the child analysis also results in a determination that Pennsylvania is the most appropriate forum because Kendall's sister, Kayla, resides there with Cohen, and the parties "had initiated custody proceedings in Pennsylvania." **Id.** at 19.

We find Cohen's argument unpersuasive. Section 5421 of the UCCJA provides that a Pennsylvania court has jurisdiction to make an initial child custody determination only in the following circumstances:

---

[4] **See** 23 Pa.C.S. §§ 5401 *et seq*.

(1) this Commonwealth is the home state of the child on the date of the commencement of the proceeding or was the home state of the child within six months before the commencement of the proceeding and the child is absent from this Commonwealth but a parent or person acting as a parent continues to live in this Commonwealth;

(2) a court of another state does not have jurisdiction under paragraph (1) or a court of the home state of the child has declined to exercise jurisdiction on the ground that this Commonwealth is the more appropriate forum under section 5427 (relating to inconvenient forum) or 5428 (relating to jurisdiction declined by reason of conduct) and:

> (i) the child and the child's parents, or the child and at least one parent or a person acting as a parent, have a significant connection with this Commonwealth other than mere physical presence; and

> (ii) substantial evidence is available in this Commonwealth concerning the child's care, protection, training and personal relationships;

(3) all courts having jurisdiction under paragraph (1) or (2) have declined to exercise jurisdiction on the ground that a court of this Commonwealth is the more appropriate forum to determine the custody of the child under section 5427 or 5428; or

(4) no court of any other state would have jurisdiction under the criteria specified in paragraph (1), (2) or (3).

23 Pa.C.S. § 5421(a). It is important to note the statute was revised in 2004, and the Comment following the revision explains that among the changes was "[t]he jurisdiction of the home state has been prioritized over other jurisdictional bases." 23 Pa.C.S. § 5421, Uniform Law Comment. Section 5402 defines a child's "home state" as:

> The state in which a child lived with a parent or a person acting as a parent for at least six consecutive months immediately before the commencement of a child custody proceeding. **In the case of a child six months of age or younger, the term means the**

**state in which the child lived from birth with any of the persons mentioned.** A period of temporary absence of any of the mentioned persons is part of the period.

23 Pa.C.S. § 5402 (emphasis supplied).

Accordingly, under a plain reading of the statute, Pennsylvania did not have jurisdiction to make an initial custody determination of Kendall. Kendall was born in Florida on September 12, 2013, and has remained there during these proceedings. When Cohen filed his amended custody complaint on March 1, 2013, Kendall was less than six months' old. Therefore, pursuant to Section 5402, Florida is her "home state." Moreover, none of the remaining bases for jurisdiction in Pennsylvania set forth in Section 5421 are applicable since Florida has not declined to exercise jurisdiction.[5]

Furthermore, Cohen's reliance on **Merman**, **supra**, and the significant contacts test, is misplaced. First, **Merman** was decided under the prior version of the UCCJA. **See Merman**, **supra**, 603 A.2d at 204 (relying upon now repealed 23 Pa.C.S. §§ 5348). Second, in that case, the father initiated custody proceedings in Pennsylvania within six months' of the mother's move, with the children, to New Jersey. **See id.** at 202. Therefore, Pennsylvania was the home state of the children at the time of the initiation of proceedings.

---

[5] Cohen implies Pennsylvania had jurisdiction over Kendall because Braid was "still a resident of Pennsylvania" when he initiated the custody proceedings. **See** Cohen's Brief at 17. However, he provides no legal support for this assertion. Section 5402 clearly states that the "home state" of a child six months of age or younger is "the state in which the child lived from birth with" a parent. 23 Pa.C.S. § 5402. Had Kendall been born in Pennsylvania, our analysis would be different.

*See id.* at 204. Third, because the children had been living in New Jersey since the move, the father conceded New Jersey also had jurisdiction under the UCCJA. *See id.*, citing former statute 23 Pa.C.S. § 5344(a)(2). Therefore, in that case, the Pennsylvania court was permitted to consider which jurisdiction was a more appropriate forum under former statute, 23 Pa.C.S. § 5348(e). Conversely, in the present case, the Montgomery County court never had jurisdiction over Kendall. Accordingly, the "significant contacts" test is irrelevant under the facts of this case. *See* 23 Pa.C.S. § 5421, Uniform Law Comment ("[A] significant connection state may assume jurisdiction **only** when there is **no home state** or when **the home state decides** that the significant connection state would be a more appropriate forum under section 207 or 208 (section 5427 or 5428).") (emphasis supplied). Likewise, while we recognize the importance of a best interest of the child analysis in custody proceedings, the analysis is unnecessary where, as here, the Montgomery County court had no jurisdiction over the child.

Because we agree with the trial court that Pennsylvania had no jurisdiction to determine the custody of Kendall, Cohen's request for emotional distress and travel expense damages necessarily fails. Indeed, had Attorney sought custody of Kendall in Montgomery County, her petition would have been denied. Cohen may still seek custody of Kendall in the Florida courts.

Lastly, we note Cohen objects to the trial court's consideration of the ultimate ruling in underlying custody proceeding, which in June of 2015, dismissed his complaint seeking custody of Kendall due to the lack of subject

matter jurisdiction. *See* Cohen's Brief at 20. He emphasizes "[p]reliminary objections may only rest upon the Complaint's sufficiency" and if the record is not sufficiently developed, "then this matter should be remanded to the Court of Common Pleas to develop the child custody record." *Id.*

Generally, a trial court's review of preliminary objections in the nature of demurrer, "should be restricted to the facts alleged in the complaint, and a trial court should not take judicial notice of collateral facts." ***220 P'ship v. Philadelphia Elec. Co.***, 650 A.2d 1094, 1097 (Pa. Super. 1994). However, a court may take judicial notice of a fact "which the parties have admitted or which is incorporated into the complaint by reference to a prior court action." *Id.* Indeed, "[t]he sufficiency of a complaint which refers to a separate and distinct proceeding is determined by a consideration of all relevant matters therein set forth." ***Gulentz v. Schanno Transp., Inc.***, 513 A.2d 440, 443 (Pa. Super. 1986), *appeal denied*, 527 A.2d 541 (Pa. 1987), and 527 A.2d 543 (Pa. 1987).

Here, the underlying custody proceedings were referenced in, and relevant to, the complaint because Cohen's cause of action was based upon Attorney's purported negligence in representing him in those proceedings. Nevertheless, our conclusion that Pennsylvania did not have jurisdiction to determine the custody of Kendall was not based upon the June 8, 2015, ruling of the Montgomery County Court of Common Pleas. Rather, it was based upon the facts set forth in the complaint and underlying custody proceedings, as well as the applicable law.

Accordingly, because we agree Cohen has failed to state a cognizable claim of legal malpractice against Attorney, we affirm the order sustaining Attorney's preliminary objections and dismissing the complaint with prejudice.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date:2/7/18